# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| DISTRICT TITLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1808 (ABJ) |
| | ) | |
| ANITA K. WARREN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | |

## MEMORANDUM OPINION AND ORDER

After an error at a real estate closing resulted in the misdirection of some of the proceeds, and defendant Anita K. Warren and her son, Timothy Day, refused to pay them back, plaintiff District Title brought this action for breach of contract, trover and conversion, unjust enrichment, and other equitable relief. Plaintiff also filed a motion for a preliminary injunction, which the Court granted on December 15, 2014, and the Court is now faced with a number of motions filed by the defendants. Both Warren and Day have moved to dismiss several counts for failure to state a claim upon which relief can be granted. Defendant Day also contends that the complaint should be dismissed as to him for improper service and lack of personal jurisdiction. And defendant Warren has filed a motion to compel arbitration and to stay the case.

The Court finds that defendant Day was properly served and that he is subject to the jurisdiction of this Court. The Court further finds that the challenged counts of the complaint state claims upon which relief can be granted. Finally, the Court finds that, under the particular circumstances of this case, defendant Warren has forfeited her right to compel arbitration. Therefore, defendants' motions will be denied, and the Court will establish a schedule for discovery at the upcoming status conference.

# BACKGROUND

## I.      Factual Background

Plaintiff is a real estate settlement company that handled the July 11, 2014 settlement of the sale of a property in the District of Columbia owned by defendant Warren.  *See* Am. Compl. [Dkt. # 5] ¶¶ 1, 14.  Defendant Day is defendant Warren's adult son.  Def. Day's Mot. to Dismiss [Dkt. # 10] ("Day Mot.") at 1.  At the time of the transaction, $293,514.44 was owed to a mortgage lender, Wells Fargo.  *See* Am. Compl. ¶¶ 9, 15.   But plaintiff erroneously wired the funds that were supposed to go to Wells Fargo to defendant Warren.  Am. Compl. ¶ 15.   As of the date of this Memorandum Opinion and Order, defendants have declined to comply with plaintiff's numerous requests for the return of the funds, and the complaint alleges that Warren and Day spent them instead.  *See* Am. Compl. ¶ 18.

Plaintiff has produced evidence that on or about the date of the settlement, defendant Warren transferred $100,000 by a cashier's check made out to defendant Day and a third party, Anthony Silva.[1]  Ex. 2 to Am. Compl. [Dkt. # 5].   The check was deposited in an account owned by Anthony and Suzanne Silva and processed on July 14, 2014.  *Id.*  In late July 2014, Anthony and Suzanne Silva purchased real property in Worcester County, Maryland with the address of 6 Boston Drive, Berlin, Maryland.  Ex. 3 to Am. Compl. [Dkt. # 5] (copy of wire transfer of $60,600 from Silvas to Brennan Title Company); Ex. 4 to Am. Compl. [Dkt. # 5] (deed of trust).  Plaintiff alleges that the funds used in that transaction came from defendant Warren and lawfully belonged to plaintiff.  Am. Compl. ¶ 21.

---

1      Plaintiff alleges that Silva is a relative of the defendants.  Pl.'s Mem. of P. & A. in Opp. to Day Mot. [Dkt. # 17] at 3.

In addition, on August 20, 2014, defendant Warren transferred $189,028.98 to the Brennan Title Company.  Ex. 5 to Am. Compl. [Dkt. # 5].  On August 26, 2014, defendant Day purchased real property in Worcester County, Maryland with the address of 3 Boston Drive, Berlin, Maryland, through the Brennan Title Company.  Ex. 6 to Am. Compl. [Dkt. # 5].

The next day, August 27, 2014, defendant Day deposited a cashier's check from defendant Warren in the amount of $33,000 into his bank account, Ex. 9 to Am. Compl. [Dkt. # 5], and on September 10, 2014, defendant Day deposited two more cashier's checks from defendant Warren in the amounts of $33,000 and $33,445.  Ex. 7 to Am. Compl. [Dkt. # 5]; Ex. 8 to Am. Compl. [Dkt. # 5].  Plaintiff alleges that Day made these deposits after he was served with the original complaint in this case on September 6, 2014, Am. Compl. ¶ 23, but Day denies that he was served on that date.  Day Mot. at 1.

## II.      Procedural Background

Plaintiff originally filed its complaint in the Superior Court for the District of Columbia on September 2, 2014.  Compl., Notice of Removal [Dkt. # 1-1].  Plaintiff also filed a parallel action in the Circuit Court for Worcester County, Maryland on September 5, 2014.  *District Title v. Anita K. Warren, et al.*, No. 23-C-14-001158 (Worcester Cnty. Cir. Ct. filed Sept. 5, 2014), http://caseresearch.courts.state.md.us/ (search for Worcester County Circuit Court case number 23-C-14-001158).

Defendants removed the Superior Court action to this Court on October 29, 2014.  Notice of Removal [Dkt. # 1].  Plaintiff filed an amended complaint on November 10, 2014.  Am. Compl. Count I, for breach of contract, is brought solely against defendant Warren.  Am. Compl. ¶¶ 26– 32.  The remaining counts – for trover and conversion (Count II), unjust enrichment (Count III), and equitable and injunctive relief (Count IV) are brought against both defendants.  Am. Compl.

¶¶ 33–62.  Plaintiff seeks a judgment of at least $293,514.44 with prejudgment and postjudgment interest; equitable relief; an order that defendants provide an accounting; an order enjoining defendants from dissipating assets; and attorneys' fees and costs, with prejudgment and postjudgment interest.  Am. Compl., Prayer for Relief ¶¶ a–f.

On November 19, 2014, plaintiff filed a motion for a preliminary injunction, seeking to prevent defendants from further disbursing the $293,514.44 or from transferring any property.  Pl.'s Mot. for Prelim. Inj. [Dkt. # 6] ("Pl.'s Mot.").   On December 4, 2014, defendants Day and Warren each filed separate motions to dismiss, Day Mot.; Mem. of P. & A. in Supp. of Day Mot. [Dkt. # 10] ("Day Mot."); Def. Warren's Mot. to Dismiss [Dkt. # 11] ("Warren Mot."); Mem. of P. & A. in Supp. of Warren Mot. [Dkt. # 11] ("Warren Mot."), as well as a joint opposition to the motion for a preliminary injunction.  Opp. to Pl.'s Mot. [Dkt. # 12].  In their motions to dismiss, Warren and Day both argue that Counts II, III, and IV of the complaint should be dismissed for failure to state a claim upon which relief can be granted, Day Mot. at 10–14; Warren Mot. at 3–6, and Day also contends that he was never properly served and that the Court lacks personal jurisdiction over him.  Day Mot. at 5–9.  Defendant Warren did not contest Count I, the breach of contract claim brought solely against her, in her motion to dismiss.

On December 8, 2014, the parties and the Court conferred in a teleconference and agreed to an abbreviated briefing schedule for defendants' motions to dismiss.  The Court ordered plaintiff to file oppositions to defendants' motions to dismiss on December 9, 2014, and ordered defendants to file any replies to those oppositions on December 10, 2014.  Minute Order (Dec. 8, 2014).  On December 9, 2014, plaintiff filed its oppositions.  Opp. to Day Mot. [Dkt. # 17]; Mem. of P. & A. in Opp. to Day Mot. [Dkt. # 17] ("Opp. to Day Mot."); Opp. to Warren Mot. [Dkt. # 18]; Mem. of

P. & A. in Opp. to Warren Mot. [Dkt. # 18] ("Opp. to Warren Mot."). Defendants did not file any materials in reply by the December 10, 2014 deadline.

During its review of the pleadings in this case, the Court discovered that the settlement contract signed by defendant Warren and plaintiff contained an alternative dispute resolution ("ADR") clause that required "mandatory, binding arbitration" of "[a]ll disputes, claims, or controversies of any kind and nature arising out of . . . the relationship among the parties and District Title." *See* Ex. 10 to Am. Compl. [Dkt. # 5] ¶ F(1). On December 4, 2014, the Court ordered the parties to "file brief submissions addressing the impact of the arbitration clause . . . on the Court's ability to hear this action" on or before December 9, 2014. Minute Order (Dec. 4, 2014). On December 9, 2014, defendant Warren filed a motion to compel arbitration and to stay the entire case. Def. Warren's Mot. to Compel Arbitration & Stay Proceedings [Dkt. # 14] ("Mot. for Arb."); Mem. of P. & A. in Supp. of Mot. to Compel [Dkt. # 14] ("Mot. for Arb."). That same day, plaintiff filed a memorandum expressing its opposition to arbitration in this case. Mem. of Pl. Regarding Arbitration Provision [Dkt. # 19] ("Pl.'s Arb. Mem.").

On December 12, 2014, the Court heard argument on plaintiff's motion for a preliminary injunction, the service issue, the personal jurisdiction issue, and the arbitration clause issue. Later that afternoon, without seeking leave of the Court to file a reply after the December 10, 2014 deadline, defendant Day filed a declaration in support of his motion to dismiss. Decl. of Timothy Day in Supp. of Day Mot. [Dkt. # 20] ("Day Decl.").

On December 15, 2014, the Court granted plaintiff's motion for a preliminary injunction and issued an order designed to prevent further dissipation of the assets that would be needed to satisfy an eventual judgment in plaintiff's favor. Order [Dkt. # 21]. The Court found that plaintiff was likely to carry its burden to show that defendant Day had been properly served and that the

Court possessed personal jurisdiction over him.  *Id.* at 9, 11–12.  In addition, the Court held that plaintiff was likely to succeed on the merits of its case, that it would suffer irreparable harm in the absence of a preliminary injunction, and that the balance of the equities and the public interest weighed in favor of a preliminary injunction.  *Id.* at 14–18.  Finally, although the Court declined to rule on defendant Warren's motion to compel arbitration and to stay the case at the time, it noted that there might be "grounds to conclude that defendant Warren has forfeited her ability to compel arbitration."  *Id.* at 13.

On December 16, 2014, defendants filed a notice of interlocutory appeal challenging the Court's order of preliminary injunctive relief.  Notice of Appeal [Dkt. # 23].  That same day, defendant Day filed a second belated declaration in support of his motion to dismiss without seeking leave of Court.  Decl. of Richard Faulkingham in Supp. of Day Mot. [Dkt. # 24] ("Faulkingham Decl.").

## STANDARD OF REVIEW

### I.      Lack of Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  In order to survive a motion to dismiss for lack of personal jurisdiction, a "plaintiff must make a prima facie showing of the pertinent jurisdictional facts."  *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, a plaintiff must allege specific acts connecting the defendant with the forum.  *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  A plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction . . . ." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [the plaintiff] may rest [its] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [it] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Any factual discrepancies should be resolved in favor of the plaintiff, *Crane*, 894 F.2d at 455–56, but a Court need not treat all of the plaintiff's jurisdictional allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). "Instead, the court 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'" *In re Papst Licensing*, 590 F. Supp. 2d at 98, quoting *Philip Morris*, 116 F. Supp. 2d at 120 n.4.

## II.   Insufficient Service of Process

A plaintiff bears the burden to establish that it has properly effectuated service. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). When a defendant challenges the sufficiency of service, the plaintiff "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.*, quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 at 334 (1969). If the plaintiff does not meet that burden, the Court may dismiss the complaint without prejudice for ineffective service of process. *See* Fed. R. Civ. P. 12(b)(5); *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).

III.    **Failure to State a Claim**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 566.  A pleading must offer more than "'labels and conclusions'" or a "'formulaic recitation of the elements of a cause of action,'" *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated

by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## ANALYSIS

### I.     Day was properly served and is subject to the jurisdiction of this Court.

As a preliminary matter, the Court notes that defendant Day has improperly styled his pleading asserting improper service and a lack of personal jurisdiction as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the provision that addresses subject matter jurisdiction. *See* Day Mot. at 1, 5–9. A motion to dismiss for lack of personal jurisdiction should be brought under Rule 12(b)(2), and a motion to dismiss for insufficient service of process should be brought under Rule 12(b)(5). *See* Fed. R. Civ. P. 12 ("[A] party may assert the following defenses by motion: . . . (2) lack of personal jurisdiction; . . . (5) insufficient service of process . . . ."). Nevertheless, defendant Day insists that the personal jurisdiction issue was transformed into a subject-matter jurisdiction question by the doctrine of "derivative jurisdiction." Day Mot. at 3–4.

The doctrine of "derivative jurisdiction" does not provide a means to create questions of federal subject-matter jurisdiction, and it has no bearing on this case. When the doctrine was articulated, it provided that "[i]f the state court lacks jurisdiction of the subject-matter *or* of the parties, the federal court acquires none." *Lambert Run Coal Co. v. Balt. & O. R. Co.*, 258 U.S. 377, 382 (1922) (emphasis added). So, by its own terms, the derivative jurisdiction doctrine distinguished between subject-matter and personal jurisdiction. But more important, the doctrine simply does not apply in this case because "Congress has chosen to abrogate the derivative jurisdiction doctrine for removals effectuated under" 28 U.S.C. § 1441, *McKoy-Shields v. First Wash. Realty, Inc.*, No. 11-cv-01419 (RLW), 2012 WL 1076195, at *2 (D.D.C. March 30, 2012) – which is the provision that defendants invoked to remove this case to this Court. *See*

Notice of Removal at 1.  Indeed, section 1441 expressly provides that "[t]he court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."  28 U.S.C. § 1441(f) (2012).

And even if Day had invoked the correct provisions of Rule 12, the Court would deny his motion to dismiss for improper service and for lack of personal jurisdiction because it finds that plaintiff has carried its burden to show that service was effectuated and that Day is subject to personal jurisdiction in this Court.

### A. *Defendant Day was properly served.*

Plaintiff contends that it properly effectuated service on defendant Day on both September 6, 2014, Opp. to Day Mot. at 3, and again on March 13, 2015.  Aff. of Process Service [Dkt. # 34]. Day denies that he was served in September, but he has not objected to the March service of process, which was effectuated by alternative means pursuant to an order of this Court.  *See* Minute Order (March 13, 2015) (authorizing alternative service of process on Day).  The Court finds that the record supports a finding that service was effectuated on September 6, 2014, and that Day was properly served on March 13, 2015, in any event.

With respect to the September service, Day contends that he did not receive service within 60 days of the filing of the complaint in Superior Court, as required by District of Columbia Superior Court Civil Rule 4(m).  Day Mot. at 5.  He also points out that the Superior Court denied a default against him on November 14, 2014, arguing that it did so because "there was defective service of process upon him."  *Id.* at 2, ¶ 9.  So, defendant Day says, he was never served in September.  *Id.* at 5.

It is not at all clear, however, that the September 2014 service was ineffective.  Superior Court Rule 4(e)(2) provides that service may be effectuated by leaving the required materials "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein."  Plaintiff's affidavits of service indicate that plaintiff attempted to serve Day on September 6, 2014, by leaving materials with an adult male at Day's residence in Maryland who stated that he resided there with Day.  Ex. 4 to Opp. to Day Mot. [Dkt. # 17-4]; Ex. 5 to Opp. to Day Mot. [Dkt. # 17-5].  Moreover, contrary to Day's claims, the Superior Court denied the entry of default against him not because service on him was deficient, but because the affidavit of service did not clearly show that the person who accepted service was authorized to do so under the rules of the Superior Court.  *See* Ex. 6 to Opp. to Day Mot. [Dkt. # 17-6] (Superior Court order denying entry of default).  The Superior Court gave plaintiff an opportunity to cure this defect, *id.*, and plaintiff submitted a revised affidavit of service.  *See* Ex. 5 to Opp. to Day Mot.  The revised affidavit indicates that the person who accepted service would not give his name, and that he informed the process server that Day was not home, that he could accept service of the documents on Day's behalf, and that he resided at Day's Worcester County, Maryland property with Day.  *Id*.  The person who accepted service was described as "a White male, approximately 32–38 years old, with blonde hair, approximately 5'10'' and weighing 175 lbs."  *Id*.

In his pleadings, defendant Day offers no substantive argument as to why this revised affidavit of service was insufficient.  He also failed to meet the Court's December 10, 2014 deadline to file a reply in support of his motion to dismiss.  But after the hearing on the motion for preliminary injunction on December 12, 2014, Day filed two additional declarations in support of his motion to dismiss without leave of Court.  Day Decl.; Faulkingham Decl.  In his own declaration, Day does not deny that the Maryland property is his residence, *see* Day Decl. ¶ 3, but

he states that "no person [has] co-reside[d]" with him there, and that he "know[s] of no person who matches the[] description of a white male with blond hair who would have ever been present in [his] home . . . since [he] moved there." *Id.* ¶¶ 4, 6.  In the second declaration, a person named Richard Faulkingham avers that he "was present at Timothy Day's home in Ocean Pines Maryland on September 6, 2014," that "[a]t no time on September 6, 2014 was any white male with blond hair present at Timothy Day's home," and that "[a]t no time on September 6, 2014 did any person attempt to make service of process at Timothy Day's home."  Faulkingham Decl. ¶¶ 3–5.

In the District of Columbia, there is a "'presumption of truth attached to the statement in the process server's return'" that can only be overcome by "'strong and convincing evidence.'" *Venison v. Robinson*, 756 A.2d 906, 910 (D.C. 2000), quoting *Firemen's Ins. Co. v. Belts*, 455 A.2d 908, 909 (D.C. 1983).  Although the Court need not consider Day's late-filed declarations, the Court doubts that they are sufficient to rebut this presumption in any event.  Defendant Day's bare, self-serving denial certainly does not constitute "strong and convincing evidence," and Mr. Faulkingham's declaration raises more questions than it answers.

Moreover, whether or not the September 6, 2014 service was effective, plaintiff's March 13, 2015 service on Day was complete.  After defendants chose to remove this case to federal court, the service issue became governed by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 81(c)(1) ("These [federal] rules apply to a civil action after it is removed from a state court.").  Federal Rule 4 provides a 120-day time limit for service, Fed. R. Civ. P. 4(m), which had not expired at the time that defendant Day filed his motion to dismiss, and which the Court extended in response to a motion by plaintiff.  *See* Minute Order (Mar. 12, 2015); Pl.'s Mot. for Alternative Serv. of Process & Extension of Time [Dkt. # 31].

In addition, in light of plaintiff's multiple good-faith, but unsuccessful, efforts to serve defendant Day, on March 13, 2015, the Court authorized alternative service of process pursuant to Federal Rule of Civil Procedure 4 and Maryland Rule of Civil Procedure 2-121.[2]  Minute Order (Mar. 13, 2015).  Specifically, the Court permitted plaintiff to "serve (or re-serve) Timothy Day by mailing . . . a copy of the Summons and Amended Complaint to defendant Day's last known address, and by posting a copy of the Summons and Amended Complaint upon defendant's last known residence, 3 Boston Drive in Berlin, Maryland."  Minute Order (Mar. 13, 2015); *see also* Md. R. Civ. P. 2-121(c) ("When proof is made by affidavit that good faith efforts to serve the defendant . . . have not succeeded . . . the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice.").  On March 26, 2015, plaintiff filed an affidavit stating that defendant Day had been served the amended complaint by posting on March 13, 2015, and by first class mail sent March 16, 2015.  Aff. of Process Service at 1.  Accordingly – and given that defendant Day plainly has actual notice of this action – the Court finds that service upon defendant Day has been properly effectuated.

### B. *Defendant Day is subject to personal jurisdiction in this Court.*

Day also argues that the Court lacks personal jurisdiction over him because, he contends, the District of Columbia long-arm statute does not reach him.  Day Mot. at 5–7.  Plaintiff maintains that the Court may exercise specific personal jurisdiction over Day under D.C. Code. § 13-423.  Opp. to Day Mot. at 6.

---

2       Federal Rule 4 provides that "an individual . . . may be served in a judicial district in the United States by:  (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located *or where service is made* . . . ."  Fed. R. Civ. P. 4(e) (emphasis added).  In this case, service was made at Day's home in Maryland, and so alternative service pursuant to the Maryland Rules of Civil Procedure was appropriate.

Section 13-423 provides:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> *    *    *
>
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423(a)(4), (b).

To prevail on this issue, plaintiff must not only demonstrate that the requirements of the long-arm statute are met, but also that Day has sufficient "minimum contacts" with this forum so that "'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court finds that plaintiff has satisfied the first prong of D.C. Code § 13-423(a)(4), as well as D.C. Code § 13-423(b), since the trover, conversion, and unjust enrichment claims against Day allege acts committed outside of the District of Columbia that caused tortious injury within it. Day argues that this element of the statute is not met because, he says, his mother gave him funds in Maryland that he "subsequently negotiated . . . in Maryland," not the District of Columbia. Day Mot. at 7. But that contention does not undermine plaintiff's argument that defendant Day's actions in Maryland caused a tortious injury to plaintiff in the District, which is all the first prong of D.C. Code § 13-423(a)(4) requires.

The Court further finds that the evidence adduced by plaintiff demonstrates the persistent course of conduct in the District on the part of defendant Day needed to satisfy the second element of the provision.   Since plaintiff is relying solely on specific jurisdiction, this requirement "is satisfied by connections considerably less substantial than those it takes to establish general, all-purpose 'doing business'- or 'presence'-based jurisdiction." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987); *see also Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 934 (D.C. Cir. 1981). A relationship between the "persistent course of conduct" and the act causing tortious harm is not required.  *See Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 761 (D.C. 2009) ("[W]here the tortious act is alleged to have caused injury in the District of Columbia, and the claim arises from such act and injury, no additional nexus need be shown between the claim and the persistent course of conduct.").   Rather, the persistent course of conduct requirement is a "plus factor" that "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane*, 814 F.2d at 763.

Still, "there is a 'notable lack' of authority regarding what level of contact with the District suffices for purposes of" the persistent course of conduct analysis. *FINCON Servs.*, 681 F. Supp. 2d at 48, quoting *Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 153 (D.D.C. 2006).   At a minimum, the contacts "should 'at least be continuing in character.'" *Burman*, 437 F. Supp. 2d at 153, quoting *McFarlane v. Esquire Magazine*, No. 92-0711, 1994 WL 510088, at *4 (D.D.C. June 8, 1994).  Attending a few business meetings in the District, *e.g. Urban Inst.*, 681 F. Supp. 2d at 48, occasional travel to the District, *e.g. McIntosh v. Gilley*, 753 F. Supp. 2d 46, 59 (D.D.C. 2010), and even settling a real estate transaction in the District in the absence of other contacts, *e.g. Sec. Bank, N.A. v. Tauber*, 347 F. Supp. 511, 515 (D.D.C. 1972), may not be enough to meet this standard.

To establish the persistent course of conduct element, plaintiff points first to Day's active involvement in both the sale of defendant Warren's property and in the subsequent communications concerning the overpayment.  Opp. to Day Mot. at 7–8.  Plaintiff states that Day communicated "on multiple occasions" with plaintiff's employees about the settlement, and that Day attended the settlement meeting on July 7, 2014, in person.  *Id.*; Aff. of Jacquelynn N. Baker, Ex. 3 to Opp. to Day Mot. [Dkt. # 17-3] ("Baker Aff.") ¶ 10; Aff. of Steven Sushner in Supp. of Mot. for Prelim. Inj., Ex. 1 to Pl.'s Mot. for Prelim. Inj. [Dkt. # 6-3] ("Sushner Aff.") ¶¶ 16–18, 20.  These claims about Day's involvement in his mother's property sale are supported by emails that plaintiff has attached as exhibits to its pleadings.  *See, e.g.*, Ex. 1A to Sushner Aff. [Dkt. # 6-3] (pre-settlement email exchange between Jackie Baker and defendant Day); Ex. 1B to Sushner Aff. [Dkt. # 6-3] (same); Ex. 1C to Sushner Aff. [Dkt. # 6-3] (same); Ex. 1D to Sushner Aff. [Dkt. # 6-3] (same); Ex. 1E to Sushner Aff. [Dkt. # 6-3] (same).

In addition, plaintiff has shown that Day held himself out as a resident of the District of Columbia – residing in the house involved in the settlement at issue in this case – by presenting a valid District of Columbia driver's license as identification when he purchased the new property in Maryland on August 26, 2014.  *See* Ex. 8 to Opp. to Day Mot. [Dkt. # 17-8] (photocopy of driver's license).  Presumably, defendant Day also presented himself as a resident of the District of Columbia to the District of Columbia Department of Motor Vehicles in 2011 when he obtained the license in the first place.[3]  The license identifies Day's address as the address of the property that defendant Warren formerly owned in the District of Columbia.  *Id.*

---

3      It was established at the hearing on plaintiff's motion for a preliminary injunction that the DC driver's license in question was issued in 2011 and was not set to expire until 2019. That information had been redacted from the original exhibit filed with the Court.  *See* Ex. 8 to Opp. to Day Mot.

Finally, defendant Day himself informed the Court that he formerly engaged in business in the District as a CPA, operating out of the house Warren sold at the closing.  Day Mot. at 7.

In light of the evidence plaintiff has presented of Day's involvement in the settlement of the sale of his mother's property and the communications about the overpayment, the fact that as recently as August 2014, he possessed and used an unexpired District of Columbia driver's license which reflected that he lived in the District, and the fact that he previously worked in the District, the Court finds that the "persistent course of conduct" prong of D.C. Code § 13-423(a)(4) has been satisfied.  This evidence is sufficient to supply the "plus factor" needed to assure the Court that the transaction at issues in this case was not an isolated contact with the forum.[4]  *See Crane*, 814 F.2d at 763.  Moreover, for all of these reasons, the Court also concludes that haling defendant Day into

---

[4]    The Court also takes judicial notice of facts on the public record that shed additional light on the extent of Day's contacts with the District of Columbia.  Day's District of Columbia driver's license lists his residence as the property recently sold by Warren.  *See* Ex. 8 to Opp. to Day Mot. In 2010, a candidate named Tim Day who lived at that address ran for a seat representing Ward Five on the Council of the District of Columbia.  *See* District of Columbia Board of Elections and Ethics, Certified Results of General Election, November 2, 2010, https://www.dcboee.org/election_info/election_results/general_election_results/2010 (reflecting Day's candidacy for Member of the Council, Ward Five in 2010); District of Columbia Board of Elections and Ethics, List of Candidates in the Nov. 2, 2010 Mayoral General Election, https://www.dcboee.org/pdf_files/nr_592.pdf at 5 (reflecting Day's candidacy and his address). Public records also show that, at the time he ran for the Ward Five Council seat in 2010, Day held an elected position on the Advisory Neighborhood Commission ("ANC") for Ward Five.  *See* District of Columbia Board of Elections, *District of Columbia Voter Guide: Tuesday, November 2, 2010 General Election* at 25, https://www.dcboee.org/pdf_files /nr_597.pdf (noting that Day held office as an ANC Commissioner).   And in 2012, Day again ran for the Ward Five Council seat in a special election.  District of Columbia Board of Elections, Certified Results of Special Election for Member of the Council, Ward Five, May 15, 2012, https://www.dcboee.org/election_info/election_results/2012/May-15-Special-Election/District (reflecting Day's candidacy for Member of the Council, Ward Five in 2012).
        Also, the Court's own docket in this case indicates that defendant Day communicates via Twitter under the name "@Tim_Day_DC."  *See* Ex. 2 to Pl.'s Mot. for Leave to Take Depositions [Dkt. # 36-3] (screenshot of correspondence involving the "@Tim_Day_DC" Twitter account); Ex. 3 to Pl.'s Mot. for Leave to Take Depositions [Dkt. # 36-4] (same); Ex. 4 to Pl.'s Mot. for Leave to Take Depositions [Dkt. # 36-5] (same).

court in the District of Columbia would not "'offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.*, 199 F.3d at 1347, quoting *Int'l Shoe*, 326 U.S. at 316.  Thus, the Court finds that plaintiff has met its burden to establish this Court's personal jurisdiction over defendant Day.[5]

## II.    Plaintiff states a claim for trover and conversion, unjust enrichment, and equitable relief.

Defendants Warren and Day contend that plaintiff has failed to state a claim for trover and conversion (Count II), for unjust enrichment (Count III), and for other equitable relief (Count IV). Day Mot. at 10–14; Warren Mot. at 3–6.  The Court finds that plaintiff has stated a claim that is plausible on its face as to each of these issues, and so defendants' motions will be denied.

### A.    Plaintiff states a claim for trover and conversion.

"Conversion is the substantive tort theory which underlay the ancient common law form of action for trover," *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969), and so for purposes of this motion, trover and conversion are one and the same.  "Under District of Columbia law, conversion is the 'unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property.'"  *Edwards v. Ocwen Loan Serv., LLC*, 24 F. Supp. 3d 21, 30 (D.D.C. 2014), quoting *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013).  If a plaintiff alleges that money has been converted, the plaintiff must 'ha[ve]

---

5        The Court also observes that defendant Day and his co-defendants moved to dismiss the parallel action plaintiff filed in Maryland on *forum non conveniens* grounds, arguing that "there is no element of proof available to the Defendants which could prove or disprove the Plaintiff's underlying claims which do [sic] not lie in the District of Columbia more than 130 miles away." Ex. 9 to Opp. to Day Mot. [Dkt. # 17-9] at 4.  Day contended that the Maryland forum was "wildly inconvenient," and that being forced to defend there would be "profoundly oppressive and vexatious."  *Id.* at 5.  But Day cannot have it both ways:  he must be amenable to suit somewhere.

the right to a *specific identifiable fund* of money.'"  *Id.*, quoting *McNamara*, 950 F. Supp. 2d at 194.

Plaintiff alleges that it overpaid defendant Warren by the specific amount of $293,514.44 and that the funds have not been returned, which defendants do not deny.  Defendants contend, however, that any funds plaintiff accidentally wired to defendant Warren were commingled with funds to which she was lawfully entitled, making it impossible to determine now which "specific identifiable" funds were overpaid.  Day Mot. at 11–12; Warren Mot. at 4–5; *see also Edwards*, 24 F. Supp. 3d at 30.  But the amount by which plaintiff overpaid defendant Warren is both specific and identifiable; this case can be distinguished from those cited by the defendants because here, the parties can quantify the amount of the unjustly retained funds to the penny.  *See Edwards*, 24 F. Supp. 3d at 31 (dismissing claim for conversion where "plaintiff is owed *at most* some unspecified, unidentified portion of a larger pool of funds"); *McNamara*, 950 F. Supp. 2d at 195 (dismissing claim for conversion where plaintiff "argue[d] only that general partnership funds – which were derived in part from services he provided – were misdirected" because "such fungible cash is precisely the type of fund that may not underlie a claim for conversion" and because funds contributed to a partnership became the property of the partnership).  Thus, the Court finds that plaintiff has stated a claim for trover and conversion here.

### B.  *Plaintiff states a claim for unjust enrichment.*

"Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another."  *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992).  "[T]he doctrine of unjust enrichment depends on whether it is fair and just for the recipient to retain the benefit, not on whether the person or persons who bestowed the benefit had any duty to do so."  *Id.* at 56.  In the District of Columbia, "a party asserting a claim for unjust enrichment

must show that:  '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010), quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).  A "court must evaluate unjust enrichment claims on a 'case-by-case basis, considering the particular circumstances giving rise to the claim.'" *Xereas v. Heiss*, 933 F. Supp. 2d 1, 12, (D.C.C. 2013), quoting *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 814 (D.C. 2009).

As plaintiff concedes, "[i]n the District of Columbia, a party cannot recover on a claim of unjust enrichment for activities that are covered by an express contract between the parties." *CapitalKeys, LLC v. CIBER, Inc.*, 875 F. Supp. 2d 59, 65 (D.D.C. 2012); Opp. to Day Mot. at 12; Opp. to Warren Mot. at 7; *see also Albrecht v. Comm. on Emp't Benefits of Fed. Reserve Emp't Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2005) ("'[T]here can be no claim for unjust enrichment when an express contract exists between the parties.'"), quoting *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997); *Plesha*, 725 F. Supp. 2d at 112 ("'One who has entered into a valid contract cannot be heard to complain that the contract is unjust, or that it unjustly enriches the party with whom he or she has reached agreement.'"), quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005).

Defendant Warren contends that plaintiff cannot recover for unjust enrichment against her because plaintiff also alleges that she was bound by a valid contract.  Warren Mot. at 6; *see also* Am. Compl. ¶¶ 26–32.  But the Federal Rules of Civil Procedure permit plaintiffs to plead alternative theories of recovery, *see* Fed. R. Civ. P. 8(d), and "[c]ourts in this District have found that a plaintiff should be permitted to plead both breach of contract and unjust enrichment." *The Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 44 (D.D.C. 2009) (collecting

cases); *see also United States ex rel. Shemesh v. CA, Inc.*, No. 09-cv-1600 (ESH), 2015 WL 1447755, at *9 (D.D.C. Mar. 31, 2015). *But see United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 160–61 (D.D.C. 2011) (granting motion to dismiss unjust enrichment claim where, "throughout the extensive briefing each party has prepared in this case, there [was] no suggestion that the . . . contract is invalid or inapplicable to the dispute at hand" and where the court made the finding that "an express contract [was] present"). Moreover, without the benefit of discovery, it is not yet clear whether the activities at issue in the unjust enrichment claim against defendant Warren overlap entirely with the breach of contract claim. *See CapitalKeys*, 875 F. Supp. 2d at 65; *see also Movahedi v. U.S. Bank, N.A.*, 853 F. Supp. 2d 19, 29 (D.D.C. 2012) (declining to dismiss unjust enrichment claim where it was "based on conduct that occurred after the event authorized by the contract . . . and that would not have been governed by the terms of the contract at any point in time"); *see also* Am. Compl. ¶ 46 (alleging that both defendants "have engaged in other nefarious acts" with the funds they allegedly unjustly retained). Accordingly, under the particular circumstances presented here, *see Xereas*, 933 F. Supp. 2d at 12, the Court finds that it would be premature to dismiss the unjust enrichment claim as to defendant Warren, even though plaintiff will not ultimately be able to "recover damages on legally inconsistent theories." *See Shemesh*, 2015 WL 144755, at *9.

Defendant Day argues that the unjust enrichment claim must be dismissed as to him because, he contends, "[a] 'valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" Day Mot. at 13, quoting *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 249 (S.D.N.Y. 2012). But the Court has already concluded that it is not yet clear whether there is, in fact, an all-encompassing contract between plaintiff and defendant Warren. Moreover, defendant Day has not

provided the Court with any authority from this Circuit – or from any court outside New York – that supports the argument that a contract to which Day is not a party could bar plaintiff from recovering for unjust enrichment against him, and the District of Columbia Court of Appeals has expressly declined to rule on that question.  *See Jordan Keys*, 870 A.2d at 64–65 (observing that "[t]he equities may be quite different . . . where A, who claims that B has been unjustly enriched at A's expense, has a contract with C rather than with B," but declining to "decide the merits" of that issue); *see also Xereas*, 933 F. Supp. 2d at 13.  Therefore, the Court concludes that plaintiff has stated a claim for unjust enrichment as to Day.

### C.  Plaintiff states a claim for other equitable relief.

Plaintiff alleges that defendants have acted in bad faith, deliberately, and with knowledge of their wrongdoing, Am. Compl. ¶¶ 55–62, and it asks the Court to order defendants to make an accounting of their funds, to prevent further distribution or spreading of the funds, to impose attorney's fees, and to otherwise fully compensate plaintiff.  Am. Compl., Prayer for Relief ¶¶ a–f.  Defendants argue that these equitable claims should be dismissed because "the Court cannot now discriminate between" the overpaid funds and the rightfully paid funds, and because plaintiff is "barred from such equitable relief because of its claim to an existing contract between it and Warren."  Day Mot. at 12–13; Warren Mot. at 5–6.  As the Court has already determined that the amount of the overpaid funds is readily identifiable, and that plaintiff's claims relating to the contract with Warren do not necessarily undermine its equitable claims, defendants' motions to dismiss on this basis will be denied.

### III.  Defendant Warren forfeited her right to compel arbitration.

During the Court's review of the pleadings filed in this case, the Court discovered that the settlement contract signed by defendant Warren and plaintiff, and attached as an exhibit to the

complaint, contained an ADR clause requiring "mandatory, binding arbitration" of "[a]ll disputes, claims, or controversies of any kind and nature arising out of . . . the relationship among the parties and District Title." *See* Ex. 10 to Am. Compl. ¶ F(1).  None of the parties had mentioned the ADR clause in any of their pleadings, and the Court ordered them to "file brief submissions addressing the impact of the arbitration clause" on this case.  Minute Order (Dec. 4, 2014).

On December 9, 2014, defendant Warren filed a motion to compel arbitration and to stay all other proceedings, Mot. for Arb., and plaintiff filed a memorandum setting forth its position that the case should not be stayed or arbitrated.  Pl.'s Arb. Mem.  Warren contends that the breach of contract issue is governed by the arbitration agreement, and argues that the entire case – including the claims related to defendant Day, who is not bound by the ADR clause – should be stayed pending arbitration because "[a]ll of the Plaintiff's claims are derivative of the breach of contract claim."[6]  Mot. for Arb. at 7–8.  Plaintiff asserts that Warren has forfeited her right to arbitration by acting in a manner inconsistent with the intent to arbitrate.  Pl.'s Arb. Mem. at 5–6.

"'[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'"  *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 424 (D.C. Cir. 2008), quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  But in this Circuit, "a party may waive its right to arbitration by acting 'inconsistently with the arbitration right.'"  *Id.* at 425, quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987).  Moreover, "[a] defendant seeking a stay pending arbitration . . . who has not invoked the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss, has presumptively forfeited that right."

---

6   Warren further asserts that the Court should stay "all pending state court proceedings between the parties," including the "duplicative state court proceedings in Maryland."  *Id.* at 8–9. But the actions of a Maryland state court are plainly beyond this Court's reach.

*Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011), citing Fed. R. Civ. P. 8(c).  "In this circuit, the court views 'the totality of the circumstances [in deciding whether] the defaulting party has acted inconsistently with the arbitration right,'" by, for example, actively participating in a lawsuit.  *Khan*, 521 F.3d at 425, quoting *Nat'l Found.*, 821 F.2d at 774–75 (alteration in original).

The Court finds that defendant Warren has forfeited her right to compel arbitration.  Warren removed this case from Superior Court and filed both a motion to dismiss and an opposition to plaintiff's motion for a preliminary injunction without raising the arbitration issue.[7]  *See* Notice of Removal; Warren Mot.; Opp. to Pl.'s Mot.  Moreover, it is not clear when or if Warren would have raised the issue at all, given that the Court itself brought the ADR clause to her attention and ordered her to address it.  *See* Minute Order (Dec. 4, 2014).  Under these particular circumstances, the Court finds that Warren has "act[ed] 'inconsistently with the arbitration right,'" *Khan*, 521 F.3d at 425, quoting *Nat'l Found.*, 821 F.2d at 774, and has therefore forfeited her right to arbitrate here.  *See Zuckerman Spaeder*, 646 F.3d at 921, 923 (affirming district court's denial of stay pending arbitration where party had "answered the complaint and moved the case from state to federal court, and from the court to mediation, all before . . . even indicating he intended to arbitrate his claims"); *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (affirming denial of motion to stay pending arbitration where appellant had moved to transfer venue, filed an answer to the complaint and a counterclaim, and noticed and taken depositions); *cf. Khan*, 521 F.3d at 426 (holding that "filing a motion for summary judgment based on matters outside the

---

7    Warren contends that she should be permitted to compel arbitration because even though she filed several pleadings in this case, none of the filings addressed the breach of contract count.  Mot. for Arb. at 7.  But that strategic decision does not change the fact that Warren had several opportunities to invoke her arbitration right that she let go by.  *See Zuckerman Spaeder*, 646 F.3d at 922.

pleadings is inconsistent with preserving the right to arbitrate").  Accordingly, defendant Warren's motion to compel arbitration and to stay this case will be denied.

## CONCLUSION AND ORDER

For the reasons stated above, it is **ORDERED** that the motions to dismiss of defendant Day [Dkt. # 10] and defendant Warren [Dkt. # 11] are **DENIED**.

It is **FURTHER ORDERED** that defendant Warren's Motion to Compel Arbitration and Stay Proceedings [Dkt. # 14] is **DENIED**.

**SO ORDERED.**


AMY BERMAN JACKSON
United States District Judge

DATE:  June 1, 2015

25