# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT TITLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 14-1808 (ABJ) |
| | ) |
| ANITA K. WARREN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff District Title, a real estate settlement company, was handling the sale of a property formerly owned by defendant Anita K. Warren when it erroneously transferred $293,514.44 to Warren instead of to the mortgage lender, non-party Wells Fargo Bank, N.A.  Am. Compl. [Dkt. # 5] ¶ 15.  Warren promptly transferred the funds to her son, who immediately purchased property, and now the two refuse to give the money back.  *See* Pl.'s Statement of Material Facts Not In Genuine Dispute [Dkt. # 76-2] ("Pl.'s SOF") ¶¶ 14–30.

Plaintiff filed this action against Warren and her son, defendant Timothy Day, and on September 28, 2015, it moved for summary judgment.  Pl.'s Mot. for Summ. J. [Dkt. # 76] ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Mot. for Summ. J. [Dkt. # 76-1] ("Pl.'s Mem.").  Defendants opposed the motion, but solely on legal grounds.  Defs.' Opp. to Mot. for Summ. J. [Dkt. # 77] ("Defs.' Opp.").  Plaintiff accompanied its motion with the necessary statement of undisputed material facts.  Pl.'s SOF.  But defendants did not file "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," as required by Local Civil Rule 7(h)(1).  Since defendants have failed

to controvert any of the facts stated by plaintiff, the Court will deem those facts to be admitted. LCvR 7(h)(1) ("[T]he Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Furthermore, defendants have admitted the salient facts in their responses to plaintiff's Requests for Admissions. *See* Exs. 3–4 to Pl.'s Mot. [Dkt. # 76-5, 75-6]. For those reasons and for the additional reasons stated below, the Court will grant plaintiff's motion for summary judgment.

## BACKGROUND

The Court has set forth the background of this case in numerous previous orders; s*ee* Order (Dec. 15, 2014) [Dkt. # 21] (granting plaintiff's motion for preliminary injunction); Order (Jan. 9, 2015) [Dkt. # 29] (denying defendants' motion to stay preliminary injunction); Mem. Op. & Order (June 1, 2015) [Dkt. # 40] (denying defendants' motions to dismiss and defendant Warren's motion to compel arbitration and stay proceedings); Mem. Op. & Order (June 15, 2015) [Dkt. # 46] (denying defendants' motion to stay discovery), but the facts supporting summary judgment will be summarized again here.

Plaintiff is a real estate settlement company that, on July 11, 2014, handled the sale of a property formerly owned by defendant Warren. Pl.'s SOF ¶¶ 1, 7. At the time of the sale, plaintiff mistakenly wired $293,514.44 that was owed to Wells Fargo, the mortgage lender, to defendant Warren. *Id.* ¶ 12. Defendant Warren's adult son, Day, assisted his mother with the settlement process and was present at the closing. *Id.* ¶ 7. Since that time, defendant Warren has transferred those funds to Day and others, *see* Exs. 11–13 to Pl.'s Mot. [Dkt. # 76-13, 76-14, 76-15] (cashier's checks that evidence transfers from Warren to Day totaling $99,450.00); Ex. 2 to Am. Compl. [Dkt. # 5-6] ($100,000 transferred from Anita Warren to Timothy Day and Anthony Silva and

Suzanne Silva, relatives of Warren and Day, deposited into an account owned by Silva); and the money has been spent on real estate, vehicles, and other personal expenses. Exs. 3–4 to Am. Compl. [Dkt. # 5-3, 5-4] (transfer of $60,600 by the Silvas to purchase a home); Exs. 14–16 to Pl.'s Mot. ($27,185.14 in cashier's checks from Warren to Fitzgerald Auto Mall that Warren testified Day used to purchase a Jeep on July 14, 2014); Ex. 5 to Am. Compl. [Dkt. # 5-5] ($189,028.98 transferred from Day to a title company to purchase a house on August 20, 2014).[1] Defendants have repeatedly refused to return the funds. *Id.* ¶¶ 29–30.

Plaintiff filed its original complaint in the Superior Court for the District of Columbia on September 2, 2014. Compl., Notice of Removal [Dkt. # 1-1]. Plaintiff filed a parallel action in the Circuit Court for Worcester County, Maryland on September 5, 2014. Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/ (search for Worcester County Circuit Court case number 23-C-14-001158).

Defendants invoked this Court's jurisdiction by removing the Superior Court action on October 29, 2014. Notice of Removal [Dkt. # 1]. Plaintiff filed an amended complaint on November 10, 2014, which contains four counts. Am. Compl. Count I, breach of contract, is brought solely against defendant Warren. *Id.* ¶¶ 26–32. The remaining counts – trover and conversion (Count II), unjust enrichment (Count III), and equitable and injunctive relief (Count IV) – are brought against both defendants. *Id.* ¶¶ 33–62. Plaintiff seeks: a judgment of at least $293,514.44 with prejudgment and postjudgment interest; equitable relief; an order that defendants provide an accounting; an order enjoining defendants from dissipating assets; and attorneys' fees and costs.

---

1       Plaintiff has therefore put forth unrebutted evidence that Warren and Day spent over $415,000 in the days following District Title's error that led to this litigation.

On November 19, 2014, plaintiff filed a motion for a preliminary injunction, seeking to prevent defendants from further dissipating any of the $293,514.44 or from transferring any real property.  Pl.'s Mot. for Prelim. Inj. [Dkt. # 6].  While that motion was pending, on December 4, 2014, defendants each filed separate motions to dismiss.  Def. Day's Mot. to Dismiss [Dkt. # 10] ("Day MTD"); Def. Warren's Mot. to Dismiss [Dkt. # 11] ("Warren MTD").  Day moved to dismiss the entire complaint for what he characterized as a lack of subject matter jurisdiction, but was actually a claim that the District of Columbia courts lacked personal jurisdiction over him. Day MTD at 5–9; Mem. Op. & Order (June 1, 2015) (denying defendants' motions to dismiss). He also moved to dismiss certain counts for failure to state a claim under Rule 12(b)(6).  Day MTD at 1.  Warren moved to dismiss the state common law claims under Rule 12(b)(6), but did not move to dismiss the breach of contract claim.  Warren MTD at 1.

Also, during its review of the pleadings filed in this case, the Court discovered that the settlement contract signed by defendant Warren and plaintiff contained an Alternative Dispute Resolution Clause that required "mandatory, binding arbitration" of "[a]ll disputes, claims, or controversies of any kind and nature arising out of . . . the relationship among the parties and District Title."  *See* Ex. 10 to Am. Compl. [Dkt. # 5] ¶ F(1).  On December 4, 2014, the Court ordered the parties to "file brief submissions addressing the impact of the arbitration clause . . . on the Court's ability to hear this action" on or before December 9, 2014.  Minute Order (Dec. 4, 2014).  On December 9, 2014, defendant Warren filed a motion to compel arbitration and to stay all other proceedings.  Def. Warren's Mot. to Compel Arbitration & Stay Proceedings [Dkt. # 14] ("Mot. to Compel"); Mem. of P. & A. in Supp. of Mot. to Compel [Dkt. # 14] ("Mot. to Compel"). That same day, plaintiff filed a memorandum opposing arbitration in the case.  Mem. of Pl. Regarding Arbitration Provision [Dkt. # 19].

The Court heard argument on plaintiff's motion for a preliminary injunction on December 12, 2014.  Min. Entry (Dec. 12, 2014).  The Court granted plaintiff's motion for a preliminary injunction on December 15, 2014.  Order (Dec. 15, 2014) [Dkt. # 21].  The Court of Appeals later affirmed the issuance of the preliminary injunction.  Mandate of the U.S. Court of Appeals [Dkt. # 74] at 1.

On June 1, 2015, the Court denied defendants' motions to dismiss and defendant Warren's motion to stay and compel arbitration.  Mem. Op. & Order (June 1, 2015) [Dkt. # 40].  As to the arbitration question, the Court found that defendant Warren forfeited her right to arbitration, in part because she "acted inconsistently with the arbitration right."  *Id.* at 23–24, citing *Khan v. Parsons Global Servs.*, 521 F.3d 421, 425 (D.C. Cir. 2008) (alteration omitted).  And the Court found ample grounds to support personal jurisdiction over defendant Day under the D.C. long arm statute.  *Id.* at 13–18.

At that point, the Court entered a scheduling order authorizing plaintiff to initiate discovery.  Order (June 4, 2015) [Dkt. # 41].  But, on June 8, 2015, defendants moved for summary judgment.  Mot. for Summ. J. [Dkt. # 43].  They asserted that the Court lacked subject-matter jurisdiction over the case, but this time on the grounds that plaintiff did not have standing to pursue it.  *Id.* at 1.  On July 30, 2015, the Court denied defendants' motion for summary judgment, finding that plaintiff had standing to pursue its case.  Order (July 30, 2015) [Dkt. # 50]; Mem. Op. (July 30, 2015) [Dkt. # 51].  The Court later denied defendants' motion for reconsideration of the denial of summary judgment, in which defendants' continued to press the standing concerns.  Order (Aug. 11, 2015) [Dkt. # 56].  On August 11, 2015, defendants filed a writ of prohibition in the D.C. Circuit, attempting to enjoin the Court from taking further action in this case on the ground that the Court lacked jurisdiction, given the absence of standing.  The Court of Appeals rejected

defendants' arguments in a one-page per curiam order; the panel noted that defendants may challenge plaintiff's standing on appeal after a final judgment. *In re Warren*, No. 15-5225 (D.C. Cir. Oct. 27, 2015).

On September 28, 2015, District Title moved for summary judgment. Pl.'s Mot. Defendants oppose the motion. Defs.' Opp. Defendants devote the bulk of their memorandum to arguing – once again – that plaintiff lacks standing to bring this suit. Defs.' Opp. at 2–14. Defendants also reiterate their argument that Warren is entitled to arbitrate the breach of contract claim. *Id.* at 18–21. They have not identified any genuine disputes of fact that would preclude summary judgment. *See generally* Defs.' Opp.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236,

1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

### I.      Plaintiff has constitutional standing

In opposing plaintiff's motion for summary judgment, defendants, who removed the action to this Court in the first place, assert that plaintiff lacks Article III standing, and that the Court lacks subject matter jurisdiction, on the theory that plaintiff cannot sue to recover money that is owed to a third party.  Defs.' Opp. at 4.  Defendants have made this same argument at least five times, and each time it has been rejected.  This time defendants provide no new grounds for why the Court's analysis should be altered, and instead they rely on arguments that this Court has repeatedly rejected.

It is true that constitutional standing is a necessary predicate to any exercise of federal jurisdiction.  *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).  A plaintiff can establish that it has standing by showing that:  "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000).  The "injury in fact" element, which is at issue here, requires a party to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982), quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979).  When an alleged

injury-in-fact is "threatened" and not yet realized, it must still be "actual or imminent, not conjectural or hypothetical." *Public Citizen v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

This is an action for breach of contract brought by a party to the contract against the counterparty. The existence of the contract between District Title and defendant Warren is undisputed. Pl.'s SOF ¶ 11. In addition, this case seeks remedies in tort against defendants Warren and Day for their alleged wrongful failure to return funds that do not belong to them. The Court has previously decided that plaintiff has standing to pursue its claims in this case:

> First, plaintiff's breach of contract claim against defendant Warren plainly alleges that plaintiff has suffered an "injury in fact" – the breach of the contract – that is "traceable to" defendant Warren and redressable by the Court. And, second, defendants' ongoing refusal to return the $293,514.44 to plaintiff has placed plaintiff squarely in the path of "imminent" and "concrete and particularized" harm. All parties appear to agree that this amount is still owed to Wells Fargo, and the fact that Wells Fargo may not yet have sought to collect the funds from plaintiff does not change the fact that defendants' refusal to return the funds has exposed plaintiff to liability.

Mem. Op. (July 30, 2015) at 4 (citations omitted); Mem. Op. & Order (Jan. 9, 2015) at 9 (citations omitted); Mem. Op. & Order (June 15, 2015) at 6–7; *see also* Order (Aug. 11, 2015) at 4.

Nothing in defendants' opposition to plaintiff's summary judgment motion alters this analysis. Defendants argue, in the identical words that they used previously, that plaintiff has "show[n] no demand letter, indeed no correspondence at all, from any other party to the real estate closing, demonstrating it has any obligation whatsoever to pay anyone." Defs.' Opp. at 3. Defendants again point to evidence that purportedly establishes that Wells Fargo can seek its own remedies, and that District Title is "acting without authority or consent of Wells Fargo." *Id.* at 9–10; *see also* Ex. A to Defs.' Mot. for Summ. J. [Dkt. # 43-2] (Adjustable Rate Home Equity

Conversion Second Deed of Trust); Ex. B to Defs.' Mot. for Summ. J. [Dkt. # 43-3] (Appointment of Substitute Trustees).

But defendants' statements do not establish any material fact that would require the entry of judgment in their favor. Even if Wells Fargo is pursuing its own remedies, that would not change the fact that plaintiff, too, has been injured. In a sworn affidavit, the president of District Title states that, because of defendants' refusal to return the funds, "District Title has been exposed to the Mortgage Lender for payment of the entire amount due to payoff the loan," and "District Title is also exposed to liability from the new owner of the Property and District Title's commercial lender for its outstanding line of credit." Aff. of Steven Sushner, Ex. B. to Pl.'s Opp. to Defs. Mot. for Summ. J. [Dkt. # 48] ¶ 28. In other words, plaintiff's evidence – which defendants have not rebutted – shows that plaintiff "has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant[s]." *Valley Forge*, 454 U.S. at 472 (emphasis added) (citation omitted); *see also AT&T Corp. v. FCC*, 349 F.3d 692, 699 (D.C. Cir. 2003) (holding that the potential liability of the plaintiff created an injury for purposes of standing).

Defendants point to a line of D.C. Circuit cases that discuss standing to challenge a criminal prosecution before the Government has begun enforcement action. *See* Defs.' Opp. at 11–12, citing *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1141 (D.C. Cir. 2009); *Parker v. Dist. of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007); *Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005); *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997). As the Court stated previously:

> To the extent that these cases bear on a case that does not involve a potential threat of criminal prosecution by the government, the cited authority stands for the general proposition that a threatened injury that has not yet been realized may create standing where that injury is specific, credible, and imminent. The Court concludes once again that, on the current record, plaintiff has made that showing here.

Order (Aug. 11, 2015) at 5–6.  For those reasons, as well as the reasons set forth in the Court's previous Orders, the Court concludes that District Title has standing to bring this action.  *See* Mem. Op. & Order (July 30, 2015) at 4 Mem. Op. & Order (June 15, 2015) at 6–7Op. & Order (Jan. 9, 2015) at 9.

## II.     Defendant Warren forfeited her right to seek arbitration

Warren again asserts that she is entitled to arbitration.  *See* Defs.' Opp. at 18–21. As the Court explained in its Memorandum Opinion and Order of June 1, 2015, Warren forfeited her right to arbitration because she acted in a manner inconsistent with the intent to arbitrate.  Mem Op. & Order (June 1, 2015) at 23–24, citing *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011) (noting that a defendant has "presumptively forfeited" the right to arbitration when the defendant does "not invoke[] the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss").

Warren argues again that she did move to compel arbitration, and she points to the dispositive motion she filed after the Court directed the parties to brief the matter.  Defs.' Opp. at 20.  This argument is identical to the one that the Court rejected in the June 1, 2015 opinion.  *See* Mem. of P. & A. in Supp. of Def. Anita K. Warren's Mot. to Compel Arb. [Dkt. # 14] at 7.  The Court noted that Warren's "strategic decision does not change the fact that Warren had several opportunities to invoke her arbitration right that she let go by."  Mem Op. & Order (June 1, 2015) at 24 n.7.  Because Warren reasserts the same argument that the Court rejected in June, the Court need not address it further.  The Court again finds that Warren is not entitled to arbitration to defend the breach of contract action because she failed to invoke her opportunity to arbitrate at the "first available opportunity."  *Zuckerman Spaeder*, 646 F.3d at 922.

**III.     Plaintiff is entitled to summary judgment on its breach of contract and unjust enrichment claims.**

In Count I, plaintiff alleges that defendant Warren breached her contract with District Title when she failed to return the money that was incorrectly transferred to her.  Am. Compl. ¶¶ 26–32.  And in Count III, plaintiff alleges that defendants Warren and Day were unjustly enriched by plaintiff's error.  Am. Compl. ¶¶ 44–53.  In this diversity action, the Court applies the substantive law of the District of Columbia.  *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

**A.     Breach of Contract**

On a breach of contract claim, a plaintiff must show:  "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach."  *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014), quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  Plaintiff has shown that a valid contract existed between it and defendant Warren.  Pl.'s SOF ¶ 11; Ex. 6 to Pl.'s Mot. [Dkt. # 76-8] (the contract).  Plaintiff has further shown that the contract imposed a duty on Warren to correct "any errors or omissions . . . within 10 days of notification by District Title."  *Id.*  Warren breached that duty – she admits that someone from District Title notified her of, as she put it, the "overpayment" – but she has declined to return the funds.  Pl.'s SOF ¶¶ 13, 29; Ex. 7 to Pl.'s Mot. [Dkt. # 76-9] at 51–52 (Warren Dep.).

Warren does not dispute plaintiff's claim that it has satisfied those elements.  She argues solely that plaintiff cannot prove its damages because the money is actually owed to Wells Fargo, and not to District Title.  Defs.' Opp. at 2–4.

It is a basic tenet of contract law that contract damages are intended to give the injured party the "benefit of his bargain by being put in as good a position as he would have been in had the contract been performed."  *Restatement (Second) of Contracts*, § 344 (1981); *Capitol Justice*

11

*LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 23, 33 (D.D.C. 2009), citing *Vector Realty Grp. v. 711 Fourteenth Street, Inc.*, 659 A.2d 230, 234 n.8 (D.C. 1994). If Warren returns the $293,514.44 "overpayment" to District Title as the contract requires, District Title would be returned to the appropriate position, and it would be able to fulfill its obligations to the lender. The contract damages question is unrelated to the question of whether there are any other remedies available to Wells Fargo, which is not a party to the contract between Warren and District Title. Plaintiff is therefore entitled to summary judgment on Count I as to defendant Warren.

### B.    Unjust Enrichment

Plaintiff is also entitled to summary judgment on Count III. A party asserting an unjust enrichment claim must demonstrate that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). The theory of unjust enrichment is that the parties by their actions have created a quasi-contract, and a plaintiff can recover damages in cases where there is no contract. *Villa v. Inter-American Inv. Corp.*, 570 F.3d 274, 279–80 (D.C. Cir. 2009). Restitution is required when one party has been unjustly enriched. *Rapaport v. Dep't of Treasury*, 59 F.3d 212, 217 (D.C. Cir 1995) ("[T]he fundamental characteristic of unjust enrichment is that the defendant has been unjustly enriched by receiving something that properly belongs to the plaintiff, thereby forcing restoration to the plaintiff.").

Plaintiff cannot succeed on both its breach of contract claim and its unjust enrichment claim as to Warren. "Unjust enrichment will not lie when 'the parties have a contract governing an aspect of [their] relation,' because 'a court will not displace the terms of that contract and impose some other duties not chosen by the parties.'" *In re APA Assessment Fee Litig.*, 766 F.3d 39, 331

(D.C. Cir. 2014), quoting *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996).  Because the parties do not dispute the existence of a valid contract between District Title and Warren, the Court will deny summary judgment on Count III as to defendant Warren.

However, plaintiff can succeed on its unjust enrichment claim against defendant Day, because he has not a party to the contract.  *See* Pl.'s SOF ¶ 11; Ex. 6 to Pl.'s Mot. for Summ. J. And other than raising the point about defendant Warren, defendants seem not to dispute the contention that plaintiff has established the elements of unjust enrichment – they instead simply recite what the elements should be.  *See* Defs.' Opp. at 16–18.

The only defense that the Court can distill from defendants' recitation of law is that the Court cannot specify any portions of the $293,514.44 that were conferred on Day as opposed to Warren.  *Id.*  But a number of decisions in this District have explained that the theory of unjust enrichment can apply to payments conveyed through a third-party intermediary.  *See Campbell v. Nat'l Union Fire Ins. Co.*, No. 14-0892, 2015 WL 5449791, at *13 (D.D.C. Sept. 16, 2015); *JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 523 n.5 (D.D.C. 2014); *U.S. ex rel Westrick v.*

*Second Chance Body Armor, Inc.*, 685 F. Supp. 2d 129, 142 (D.D.C. 2010).  Thus, Day can be unjustly enriched through payments that he received from Warren.[2]

Plaintiff has shown that it has conferred a benefit on Day.  In defendant Warren's sworn deposition, she explained that the proceeds of the sale of the property were for Day.  Pl.'s SOF ¶ 5; Ex. 2 to Pl.'s Mot. [Dkt. # 76-4] at 34:7–18 ("Q:  What did Tim say to you about the settlement on the DC property?  A:  Just that the money was his and I said I agree with that.").  In her answers to plaintiff's Requests for Admissions, Warren admitted that:  (1) she was instructed by Day to transfer portions of the misdirected settlement funds to him; (2) she provided plaintiff's funds to Day so that Day could purchase property; (3) she provided Day with $99,445 in cashier's checks from plaintiff's funds; and (4) acted together with Day to transfer funds that she knew she had received from plaintiff in error.  Ex. 3 to Pl.'s Mot. [Dkt. # 76-5] ¶¶ 6, 9, 10, 11, 12, 16.  She further

---

2      To the extent that the defendant is arguing that the Court cannot differentiate between funds that Warren legitimately received at closing, and the funds that she was mistakenly paid, the Court has already rejected this argument, in the context of the motion to dismiss plaintiff's conversion claim:

> Defendants contend, however, that because any funds plaintiff accidentally wired to defendant Warren were commingled with funds to which she was lawfully entitled, it is impossible to determine now which funds are owed to plaintiff . . . But the amount by which plaintiff overpaid defendant Warren is both specific and identifiable; this case can be distinguished from those cited by the defendants because here, the parties can quantify the amount of the unjustly retained funds to the penny.  *See Edwards* [*v. Ocwen Loan Serv., Inc.*, 24 F. Supp. 3d 21, 31 (D.D.C. 2014)] (dismissing claim for conversion where "plaintiff is owed *at most* some unspecified, unidentified portion of a larger pool of funds"); *McNamara* [*v. Picken*], 950 F. Supp. 2d [193, 195 (D.D.C. 2013)] (dismissing claim for conversion where plaintiff "argue[d] only that general partnership funds – which were derived in part from services he provided – were misdirected" because "such fungible cash is precisely the type of fund that may not underlie a claim for conversion" and because funds contributed to a partnership became the property of the partnership).

Order (Dec. 15, 2014) at 14–15.

admitted in her sworn deposition that she bought him a car using misdirected funds.  Ex. 10 to Pl.'s Mot. [Dkt. 76-12] at 55:16 to 59:20.

Day has retained that benefit and made personal use of the funds, with knowledge that he was not entitled to them.  Pl.'s SOF ¶¶ 17, 18, 27, 28; Ex. 4 to Pl.'s Mot. at ¶ 25.   In his answers to plaintiff's Requests for Admission, Day admitted that he instructed his mother to transfer money to him, he received plaintiff's funds to purchase property, and that he received the cashier's checks. Ex. 4 to Pl.'s Mot. [Dkt. # 76-6] ¶¶ 5, 6, 10, 11.  The Court finds that it would be unjust to allow Day to retain money that does not belong to him.  As with Count I, defendant Day has admitted certain key facts and failed to rebut all others, and therefore, those are admitted as well.  LCvR 7(h)(1).  Defendant has therefore failed to show that a genuine dispute of material fact exists as to any of the required elements.  Thus, plaintiff is entitled to recover restitution in the amount of $293,514.44 from Day.

### C.    Prejudgment Interest

Plaintiff further requests that the Court order defendants to pay prejudgment interest. "Because prejudgment interest is a substantive matter, District of Columbia law applies to this issue." *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 158 (D.D.C. 2005), *vacated on other grounds*, 439 F. Supp. 2d 124 (D.D.C. 2006).  Under D.C. law:

> In an action in the United States District Court for the District of Columbia . . . to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

D.C. Code § 15-108.

First, the Court finds that the debt in this case is liquidated.  For a debt to be "liquidated," it must be "an easily ascertainable sum certain."  *Am. Nat'l Red Cross v. Vinton Roofing Co.*, 697

F. Supp. 2d 71, 74 (D.D.C. 2010), quoting *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 731 (D.C. 2003).   The amount of the overpayment, $293,514.44, is an "easily ascertainable sum certain" because there is no dispute that plaintiff is entitled to that amount under the contract.   *See id.*   "The interest rate" on such a debt "unless fixed by contract, is 6% per annum."   *Id.*, citing D.C. Code § 28-3302.

On Count I, defendant Warren will be required to pay prejudgment interest.   The contract that Warren signed with District Title provided that "unpaid adjustments shall bear interest to District Title at the rate of 12% per annum from the date of notification until paid in full."   Ex. 6 to Pl.'s Mot.   Because the interest rate of 12% is set in the contract, the plaintiff is entitled to that amount under D.C. law.   D. C. Code § 28-3302.   Defendant, again, does not contest the entry of prejudgment interest on Count I.   *See* LCvR 7(h)(1).   The Court finds that prejudgment interest is necessary to fully compensate District Title in this matter, and will award prejudgment interest to plaintiff on Count I at the rate of 12% per annum, from the date of notification – August 27, 2014 – to November 13, 2015.   *See* Aff. of Steven Sushner, Ex. 1 to Pl.'s Mot. for Prelim. Inj. [Dkt. 6-3] ¶ 16 (indicating that the President of District Title spoke to plaintiff on August 27, 2014 and notified her of the overpayment).

Though D.C. law explicitly authorizes prejudgment interest in contract actions under D.C. Code § 15-108 and § 15-109, D.C. law neither authorizes nor forbids the award of prejudgment interest for claims of unjust enrichment.   *Cf. Duggan v. Keto*, 554 A.2d 1126, 1140 (D.C. 1989) (awarding prejudgment interest on conversion claim).   Courts in this district have awarded prejudgment interest for unjust enrichment, and this Court finds no reason to decline to do the same.   *See Griffith v. Barnes*, 560 F. Supp. 2d 29, 35–36 (D.D.C. 2008); *Burlington Ins. Co.*, 398 F. Supp. 2d at 159; *BCCI Holdings (Luxemberg) Societe Anonyme v. Khalil*, 56 F. Supp. 2d 14,

67–68 (D.D.C. 1999) (assuming, without deciding, that D.C. law permits an award of prejudgment interest for restitution on a claim of unjust enrichment), *rev'd on other grounds*, 214 F.3d 168 (D.C. Cir. 2000).  In addition, D.C. law permits an award of prejudgment interest "to compensate fully the party aggrieved."  *Fed. Mktg. Co. v. Virginia Impression Prods. Co.*, 823 A.2d 513, 532 (D.C. 2003); *see also West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.").

District Title has stated that the interest that has accrued between the date of the payment to Warren and today remains due to Wells Fargo.  Pl.'s Mem. at 11.  Further, defendants do not seem to contest that prejudgment interest would be owed to the plaintiff in this case.  *See* LCvR 7(h)(1).  D.C. Code § 28-3302 provides that the rate of interest "upon the loan or forbearance of money, goods, or things in action in the absence of expressed contract, is 6% per annum."  Because Day was not bound by the contract, the Court will not assess prejudgment interest against him at the contract rate of 12% per annum, but there seems to be no reason why the 6% rate should not apply in this case.  Therefore, on Count III, Day shall pay prejudgment interest at the rate of 6% per annum from the date of breach – August 22, 2014 – to November 13, 2015.  *See* Ex. 2F to Pl.'s Mot. for Prelim. Inj. [Dkt. 6-4] at 17 (emails between plaintiff and defendant Day dated August 12, 2014); Ex. 6 to Pl.'s Mot. ("[E]rrors and omissions shall be adjusted and paid within 10 days of notification by District Title.").[3]

---

3      Because the Court has found that defendants shall be jointly and severally liable for the contract amount, but that they will also owe differing amounts of prejudgment interest, the Court will order that prejudgment interest be calculated as half of the amount of the judgment for each defendant.

### D.   Attorney's Fees

Plaintiff also requests reasonable attorney's fees and costs on Count I.  The contract between the parties provides that "[i]n the event of collection efforts by District Title, the party against whom the efforts are made shall pay all reasonable attorney's fees and costs associated with such efforts."  Pl.'s SOF ¶ 11; Ex. 6 to Pl.'s Mot.  As a general matter, the District of Columbia "follows the American Rule under which . . . every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions."  *Oliver T. Carr Co. v. United Techs. Comm. Co.*, 604 A.2d 881, 883 (D.C. 1992) (quotations omitted).  But defendant Warren, again, concedes that the parties' contract allows the plaintiff to recover attorney's fees and costs.  *See* Pl.'s SOF ¶ 11.  The Court notes that there is no basis in this motion for the assessment of fees against Day, and that District Title bears some responsibility for this debacle since it erroneously transferred the money to defendant Warren in the first place.  Therefore, District Title may be required to bear some of the cost of prosecuting this action.  But the Court will award reasonable attorney's fees on the breach of contract claim, and the motions filed by defendant Warren, and plaintiff may file a fee petition on or before December 4, 2015.[4]

### IV.   The Court will grant plaintiff's request for a permanent injunction.

In Count IV, plaintiff requests that the Court enter a permanent injunction to preclude Day from transferring real property and transferring funds in excess of $500.00 without leave of Court.  Pl.'s Mem. at 11–12.  Plaintiff further requests that Day provide a full accounting of his assets

---

4      Plaintiff has also moved for summary judgment on Count II, Conversion.  Pl.'s Mot. at 1, Pl.'s Mem at 7–9.  Because plaintiff is entitled to summary judgment on breach of contract and unjust enrichment, the Court need not reach the conversion claim.  However, the Court notes that there is no genuine issue of material fact as to the conversion claim.  Defendants only offer arguments that the Court rejected in its Order granting plaintiffs a preliminary injunction.  *Compare* Defs.' Opp. at 14–16 *with* Order (12/15/2014) at 14–15.

from July 7, 2014 to present, a detailed accounting of all funds related to the cashier's checks that

Warren issued to Day after District Title's money was transferred to Warren, and an accounting of

the proceeds of Day's transfer of real property known as 12390 Point Lookout Road, Scotland,

Maryland. *Id*.

> As the Supreme Court has explained:

> > A plaintiff seeking a permanent injunction must satisfy a four-factor test
> > before a court may grant such relief.  A plaintiff must demonstrate:  (1) that
> > it has suffered an irreparable injury; (2) that remedies available at law, such
> > as monetary damages, are inadequate to compensate for that injury; (3) that
> > considering the balance of hardships between the plaintiff and defendant, a
> > remedy in equity is warranted; and (4) that the public interest would not be
> > disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010), quoting *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Smirnov v. Clinton*, 806 F. Supp. 2d 1,

13 (D.D.C. 2011) (describing the first element as "success on the merits").  "The decision to grant

or deny permanent injunctive relief is an act of equitable discretion by the district court."  *eBay*,

547 U.S. at 391.

The Court first notes that defendants have conceded that permanent injunctive relief is

appropriate because they do not raise any opposition to the injunction in their opposition brief.

*FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997).  Further, the Court finds that plaintiffs have

made the requisite showing for a permanent injunction in this case.  First, plaintiffs have succeeded

on the merits.  *See Smirnov*, 806 F. Supp. 2d at 13.  And a mere award of damages may not be

adequate to compensate District Title for its losses.  Plaintiff have alleged – and defendants have

not rebutted – that defendants have taken actions to conceal their assets to avoid execution on their

assets after a judgment in this case.  Pl.'s Mem. at 12.  Therefore, although the plaintiff has

available to it the usual methods to execute a judgment, the monetary damages alone may not be adequate to ensure that the debt will be repaid.

Further, in balancing the equities between plaintiff and defendant, the equities favor the plaintiff.  Even though the Court will assess a substantial monetary judgment against the defendants, a permanent injunction will ensure that either the debt is repaid, or defendants will be forced to endure the burdens of the injunction until that time.  The defendants have litigated for over a year over funds that they admit were not theirs.  Finally, it remains in the public interest to ensure that money is not unlawfully withheld from its rightful owner.

## CONCLUSION

For the foregoing reasons, the Court enters summary judgment against the defendant on Counts I and III.  Defendants are liable, jointly and severally, in the amount of $293,514.44.  Further, defendant Warren must pay reasonable attorney's fees and costs, and prejudgment interest at the rate of 12% per annum, and defendant Day must pay prejudgment interest at the rate of 6% per annum.  Each defendant will pay prejudgment interest on half of the amount of the judgment.

Defendants are, in addition, permanently enjoined from dissipating their assets until the judgment is satisfied.  Therefore, defendants are ordered as follows:

(a) Defendants may not sell, transfer, or encumber the property located at 3 Boston Drive, Berlin, M.D. 21811;

(b) Defendants must continue to deliver weekly statements to plaintiff that detail every withdrawal or transfer of funds from any checking, savings, money market, or investment account and list every expenditure in excess of $500.00 (whether paid for by cash, credit card, or otherwise) during the previous seven days, identifying the date, amount, and the payee or recipient;

(c)  Defendants may not remove any funds currently stored in any safe deposit box;

(d)  Defendants may not withdraw or transfer more than $500.00 from any checking, savings, money market, or investment account at any one time without the express authorization of the Court.

Once the judgment has been satisfied, defendants may move to lift the injunction.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 13, 2015